JENKINS v STATE ex JACKSON COUNTY AGRICULTURAL SOCIETY

Ohio Appeals, 4th Dist, Jackson Co

Decided October 12, 1931

Mr. E. E. Eubanks, Jackson, for plaintiff in error.
Mr. Roy J. Gillen, Wellston, for defendant in error.

MAUCK, PJ.

There is no dispute that the agricultural society is qualified under the section mentioned to receive the benefits provided by that section. By a motion to the petition followed by a demurrer, both of which were overruled, and by answer, the auditor resisted the prayer of the petition on the ground that the petition did not show, and as a matter of fact could not show, that funds had been appropriated out of which the claim of the agricultural society could be paid, that the facts were that no certificate had been issued by the auditor upon which such appropriation could be predicated, and that the general fund of the county was overdrawn and no appropriation could be made therefrom.

The record discloses an unfortunate condition in the fiscal affairs of the county. When the commissioners represented their budget to the budget commission for the year 1931, they included an allowance of $1,500 to the agricultural society under §9894 GC. The testimony seem to disclose that the budget commission undertook to disregard this claim in making the county levy. If the agricultural society had an unqualified right to an allowance from the county treasury it was, of course, beyond the power of the budget commission to affect that right by assuming to ignore it in making the levy for the county. In its earlier forms §9894 authorized but did not require an appropriation from the county for such societies. As the section was amended March 10, 1927 (112 Ohio Laws, 85), it was provided that where such an agricultural society owns or leases a site whereon to hold fairs, and has the control and management of the lands and buildings thereon, "the county commissioners shall, on the request of the agricultural society annually appropriate from the general fund not to exceed the sum of two thousand dollars or less than fifteen hundred dollars for such purposes * * *."

This language is direct and unequivocal and entitled the agricultural society to not less than the sum of $1,500, and deprived the commissioners and all other county officers of any discretion in the premises except that the commissioners might determine the amount within the limits mentioned which an agricultural society is to receive. **State ex rel. Justice, v. Thomas, Aud., 35 Oh Ap, 250, 172 N. E., 397. It may seem** strange that an appropriation of this kind to a **quasi** private society should enjoy a preferred position, and be entitled to payment over flour for the county home, or coal for the court house, but it is so written by the lawmakers.

The same General Assembly, a few days after amending §9894 in the respects mentioned, enacted the comprehensive chapter governing the levying of taxes, the appropriation and expenditure thereof, beginning with §5625-1 GC (112 Ohio Laws, 391). It is now claimed that this act impliedly limits the operation of §9894, and in effect repeals the unqualified nature of the claim arising under §9894 in favor of the agricultural society. With this view we cannot agree. Rights created by the positive provisions of one statute are not to be destroyed by an implication arising from a subsequently passed statute, if such implication can be avoided. At the time the new budget law was passed there were many sections, of which 9894 was but one, creating fixed and inescapable liabilities of the county, such as salaries of county officers, and it is unthinkable that it was the purpose of the Legislature to make any claims of this character subject to the action or nonaction of the county commissioners. Such a construction would impose legislative functions on the commissioners and render the act of doubtful constitutionality.

It is further claimed that by §5625-33 the auditor cannot draw a warrant upon the treasurer to be paid otherwise than out of funds that have been appropriated to the particular use for which the warrant is drawn, and that §5625-37 fixes a penalty for the violation by the auditor of that provision, and that as the county commissioners have never appropriated anything to the use of the agricultural society the writ of mandamus issued by the court of common pleas in this case required the auditor to do the unlawful act condemned by the last two sections referred to. If the

auditor is right and there has been no such appropriation, it must be conceded that the writ in this case was improperly awarded.

The record shows that in January, 1931, the county commissioners had under consideration the appropriation measure for the calendar year. This measure undertook to appropriate an amount some $20,000 more than it appeared the commissioners would have to appropriate, and the county auditor properly refused to give the certificate required by §5625-30. No vote upon this appropriation measure was actually taken. The commissioners realized the necessity of eliminating some $20,000 from the measure, but were unable or unwilling to strike out the items of excess, totaling $20,000. While they took no vote upon the measure, they and the auditor by common consent proceeded as though it had been adopted. This measure included, as in law it had to include, the sum of $1,500 for the agricultural society. If the commissioners in fact, and in law, adopted this appropriation bill, they violated the terms of the statute by appropriating more than the sum that could have been certified to them. In such case we hesitate to say what the effect would be on those items in the appropriation bill which are not fixed by law. Until necessity arises, we express no opinion as to whether such items were wholly void as being beyond the power of the commissioners or whether each fund should be treated as automatically reduced pro rata in order to reduce the sum of the items of the appropriation measure to its legal total. Those items, however, that provided for the payment of such fixed liabilities as must be paid without the exercise of any discretion whatever, would in such case be legally appropriated. To be sure these, too, lacked the certificate of the auditor, but the auditor had no discretion and was bound to certify these inescapable appropriations and could have been compelled by mandamus to have certified them so long as their total did not exceed the funds available.

The commissioners and the auditor continued to transact the business of the county as though an appropriation bill had been passed, until the month of July, when, among other things, they passed a resolution appropriating from the general fund of the county $1,500 for the use of the agricultural society, and this resolution intensifies the doubt whether the action of the commissioners in the preceding January was an appropriation. From the auditor's testimony it appears that the commissioner's had for appropriation the sum of $85,000, that of this sum possibly $70,000 was required to meet fixed liabilities of the county, leaving about $15,000 available for other purposes, to be appropriated under the judgment of the commissioners. If these figures are correct the appropriations, if made by the commissioners in January, were legal so far as the fixed liabilities were concerned, including the appropriation for the $1,500 involved herein, for the lacking certificate of the auditor was a mere clerical lack that could be compelled by mandamus. Now whether or not an appropriation was made in January of any amount for any purpose, or whether all of the expenditures which have been made since that time were made in defiance of the law, we are not determining. It is apparent that if no appropriations were made in January there was available the whole $85,000 out of which an appropriation could be made in July. The auditor cannot say that there is not money in the treasury available for appropriation, when he says there never was any appropriation made and there was $85,000 available to be appropriated.

The award of the court of common pleas was erroneous only in deferring the writ of mandamus against the auditor until after the August distribution of taxes. The relator was entitled to an immediate issue of such writ. As the relator made no complaint of this, and as time has made this question unimportant, the judgment will be affirmed as it stands.

In deciding as we do, we are in entire harmony with **State, ex rel. Justice, v. Thomas, supra.** In that case the court did not award a writ of mandamus against the auditor, for the reason that no appropriation had been made by the commissioners. In this case the commissioners, either in January or July, or both, made the appropriation. While the appropriation lacked the auditor's certificate it was nevertheless entitled to such certificate, and while the trial court might have pursued the more devious way of requiring him to give his certificate and then issue his warrant, the more direct method of requiring the issuance of the warrant without the certificate offends no rights of the respondent. A court even in mandamus may consider that done which must be done.

MIDDLETON and BLOSSER, JJ, concur.